**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

ROGER CHIMNEY,
     Plaintiff,

     v.                             Case No. 3:25-cv-1317 (OAW)

LIEUTENANT RAINES, *et al.*,
     Defendants.

### <u>INITIAL REVIEW ORDER</u>

Self-represented Plaintiff Roger Chimney, an unsentenced inmate at Hartford Correctional Center ("Hartford"),[1] has filed a complaint under 42 U.S.C. § 1983 against UConn, the Connecticut Department of Correction ("DOC"), and ten DOC employees. *See generally* ECF No. 1. Plaintiff brings claims under the First and Fourteenth Amendments, and the Americans with Disabilities Act ("ADA").[2] He seeks damages and injunctive relief for these alleged violations.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, that fails to state

---

[1] The court takes judicial notice of the DOC's inmate locator. *See*, *e.g.*, *Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of the DOC inmate locator). Plaintiff entered DOC custody in January of 2025 and remains an unsentenced prisoner at Hartford. *See* DOC, *Offender Information Search*, http://www.ctinmateinfostate.ct.us/ detailsupv.asp?id_inmt_num=302451 (last visited March 31, 2026).

[2] Plaintiff also asserts claims sounding in state tort law, but the court will not address any state claims herein. If the federal claims are dismissed, the court will decline to exercise supplemental jurisdiction over any state claims.

a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The court has reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein under 28 U.S.C. § 1915A.  Based on this initial review, the court orders as follows.

## I.     **FACTUAL BACKGROUND**[3]

Plaintiff suffers from various mental and physical conditions, including back problems, arthritis, and obesity.  He uses a cane to walk.  He asserts that while incarcerated at Hartford, prison officials denied him reasonable accommodations, discriminated against him based on his weight and disabilities, denied him adequate healthcare, and exposed Plaintiff to unsafe conditions.

Plaintiff's allegations appear to arise from one specific incident that occurred when he was being transported to court.  On October 7, 2024, Lieutenant Raines apparently insisted upon Plaintiff being handcuffed for transport.  Plaintiff contends that Lieutenant Raines was acting in retaliation for a grievance Plaintiff had written about him, and that everyone else present failed to stop him.  This meant that his cane was taken from him, but without it, he had difficulty standing and moving.  He also informed the officers present (Defendants Mustafa, Cotto, and John Doe) that he would not be able to get himself into the van, which had no lift.  Lieutenant Raines told him the officers would help him walk

---

[3] All factual allegations are drawn from the complaint and are considered to be true for the purpose of this initial review.

2

and hoist him into the van.  But the officers ended up dropping him, causing him injury. The charge nurse was called, but she deemed him to be fine, and he was brought to his court proceeding.  He contends that prison officials later refused to provide medical treatment for Plaintiff because Plaintiff was due to be discharged in a few months.  Prison officials told Plaintiff that he would live and that he should take care of it when he got out.

Plaintiff wrote two grievances to prison officials regarding denial of medical treatment.  In those grievances, Plaintiff complained of pain, swelling, and other "medical problems."  Plaintiff asserts that Warden Long, Kelly (a nurse), Kidd Collins, and Tim (a medical supervisor) hindered Plaintiff's access to courts by losing, destroying, or illegally terminating the grievances.

## II.    DISCUSSION

Before delving into the substance of Plaintiff's claims, the court must give some attention to the defendants named in the complaint.  Plaintiff sues all the named defendants in their individual capacity, and he also sues UConn, Warden Long, DOC, Hanna, Tim, and Kidd Collins in their official capacity.  But there is no individual/official capacity distinction for UConn and DOC, and official capacity claims generally are construed as being asserted against the governmental entity for which that official is an agent.[4]  *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018), aff'd, 592 U.S. 43 (2020) ("In

---

[4] There is a notable exception to this rule set forth in *Ex Parte Young*, 209 U.S. 123 (1908), which allows a constitutional challenge against a governmental official in their official capacity, but only for injunctive relief, and only if there is an ongoing constitutional violation.  *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002).  Here, Plaintiff does seek injunctive relief, but

3

an official capacity suit, 'the real party in interest . . . is the governmental entity and not the named official.'") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)) (alteration in original).  Thus, the court also will construe official capacity claims as being stated against DOC (for whom the individual defendants are agents) except where otherwise stated. Finally, there simply are no particularized factual allegations stated as to UConn.  Plaintiff generally complains that the medical staff is provided by UConn, but that is too nonspecific to sustain any claims as to it.  Thus, UConn hereby is dismissed.

The court now turns to the substantive claims.

### A. <u>ADA</u>

It is generally accepted in this circuit that "individuals cannot be held personally liable for damages under the ADA . . . ."  *Murray v. Tanea*, 357 F. Supp. 3d 226, 230 (W.D.N.Y. 2019).  Thus, the court construes this claim as being stated against DOC alone.

To establish a prima facie case under the ADA, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts[] and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability."  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  There are three theories of discrimination that can be used to establish the third element: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and

---

seemingly only for his ADA claims, and so the court finds *Ex Parte Young* inapplicable here.

4

(3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).

The court accepts for purposes of initial review that Plaintiff is a qualified individual with a disability, and that DOC is subject to the ADA.  Plaintiff asserts that Defendants failed to accommodate his disabilities by providing him with his mobility aid (his cane) and not using a mechanized lift to get him into the transport van.  The court finds this sufficient to carry the claim past initial review.

### B.  Section 1983

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).  "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)) (internal quotation marks omitted).  "The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has

5

knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Rivera v. Viger*, No. 3:21-cv-00470 (VAB), 2021 WL 3269095, at *3 (D. Conn. July 30, 2021) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).  A plaintiff must show personal involvement of supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

As a preliminary matter, Plaintiff may not sue DOC under Section 1983 because it is not a "person" subject to suit under section 1983, *Auguste v. Dep't of Corr.*, 424 F.Supp.2d 363, 368 (D. Conn. 2006), and, "[a]s an arm of the state, [DOC] enjoys … Eleventh Amendment immunity against suit in federal court[.]" *Vaden v. Connecticut*, 557 F.Supp.2d 279, 288 (D. Conn. 2008).  Accordingly, any Section 1983 claim is dismissed as to DOC.

### i.   *First Amendment*

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)) (alteration in original).  Courts "'must approach prisoner claims of retaliation with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison

6

official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'"  *Bacon*, 961 F.3d at 542-43 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

The filing of a prison grievance constitutes protected activity for purposes of a First Amendment retaliation claim.  *See Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) ("The filing of prison grievances is a protected activity.").  Plaintiff has alleged that he filed a grievance against Defendant Raines before the incident at issue.  The court therefore finds the first element is satisfied.

An "adverse action," as required by the second element, is defined as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  Plaintiff alleges that Defendant Raines "unleashed" his anger by insisting that Plaintiff be handcuffed for transport to court and be carried into the transport van.  The court cannot conclude that this conduct, which is an inherent inconvenience within the prison context, would deter anyone from exercising their constitutional rights.  Accordingly, the First Amendment retaliation claim is dismissed.

### ii.    Deliberate Indifference

To prevail on his deliberate indifference claims, Plaintiff must allege facts that show both an objective and a subjective element.  More specifically, he must show (1) that he has a condition that poses an unreasonable risk of serious damage to his health (the objective element); and (2) that a defendant acted with deliberate indifference to that

7

serious condition (the subjective element).  *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017).

Relevant to the objective element, "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019).  Here, Plaintiff alleges that he has several afflictions affecting his ability to move, including severe arthritis, obesity, and back problems.  For purposes of initial review, the court considers Plaintiff's allegations sufficient to satisfy the objective element.

As to the subjective element, Plaintiff was a pretrial detainee at the time of the incident, and so this claim is evaluated under the Fourteenth Amendment.  *Darnell*, 849 F.3d at 29.  "[D]eliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind."  *Charles*, 925 F.3d at 86.  "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health."  *Id.* at 87 (emphasis in original).  A defendant's mere negligence is insufficient to support a deliberate indifference claim.  *See id.* at 86; *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

8

There appear to be three predicates for Plaintiff's deliberate indifference claim: the corrections officers causing his fall, the medical staff's immediate response to his fall, and his treatment later on.  The court takes the last predicate first.

In short, there simply are insufficient facts to find any viable claim in Plaintiff's medical treatment after his fall.  It is unclear what injuries he sustained, what he required in the way of treatment, and in what context he was told simply to seek treatment after his discharge.  Without these specifics, the court cannot find any constitutional violation in the bald conclusion that he was denied adequate medical treatment, including surgery.

Similarly, the court finds no violation in the medical staff's immediate response to his fall.  Plaintiff states that after he fell, the charge nurse was called to assess him, she asked him to move his foot, and said he was fine to continue being transported.  Other than that, he generally alleges that he was not seen by a doctor (though it appears he was seen otherwise), and there are few specific allegations about what treatment he sought and/or was refused after the fall.  The court finds these allegations insufficient to state any claim against the medical staff for the treatment immediately after his fall.  It appears he was seen, and "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim" provided that "the treatment given is adequate[.]"); *see also Sires v. Berman,* 834 F.2d 9, 13 (1st Cir. 1987) ("We do not sit as a medical board of review.  Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or

9

evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").   Any Fourteenth Amendment claim against the medical staff is dismissed.

As to the claim against the officers, though, the court finds there are adequate facts alleged.    Plaintiff not only alleges that he told the officers he would struggle to support himself into the van, but that he uses a cane, which would have alerted a reasonable person to his difficulty ambulating, and he is 461 pounds, which also should alert a reasonable person that he might have difficulty balancing and seeing where he is putting his feet.   Accordingly the deliberate indifference claim may proceed as to Defendants Cotto, Mustafa, John Doe, and Raines in their individual capacities for damages.

The court also will also a claim to proceed against Defendant Raines for instructing his subordinates to engage in violative conduct.

### iii.    *Access to Courts*

It is well established that inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996).   To show a violation of this right, a plaintiff must demonstrate that "the alleged shortcomings . . . hindered his efforts to pursue a legal claim."   *Id.* at 351.   Thus, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."   *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).   Plaintiff has not described any legal claim that has been thwarted by Defendants' actions.   Thus, any claim predicated upon his access to the courts must be dismissed.

10

C. **Appointment of Counsel**

Plaintiff has also filed a motion for the appointment of counsel.  ECF No. 4.   The Second Circuit has cautioned district courts against the "routine appointment of counsel . . . ." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989).  Thus, in considering whether to appoint pro bono counsel for an indigent litigant, the court must "first determine whether the indigent's position seems likely to be of substance."  *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *see also Cooper*, 877 F.2d at 171 ("[C]ounsel is often unwarranted where the [litigant's] chances of success are extremely slim.").  If the claims are sufficiently meritorious, the court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *See Hodge*, 802 F.2d at 61–62. At this early state of litigation, it is not clear that Plaintiff's claims are of sufficient merit to warrant an appointment of counsel, particularly given the conclusions herein.  Thus, the court must deny Plaintiff's motion, ECF No. 4, but without prejudice to filing another motion for appointment of counsel at a later time.

IV.   **ORDERS**

For the reasons stated herein, it is **ORDERED and ADJUDGED** as follows:

(1) The following claims may PROCEED for further development of the record:

    a. An ADA claim for failure to accommodate against DOC; and

11

    b.  A deliberate indifference claim against Defendants Cotto, Mustafa, John Doe, and Raines.

(2) All other claims and defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

(3) Plaintiff's Motion for Appointment of Counsel, ECF No. [4], is DENIED without prejudice to renewal at a later time.

(4) Plaintiff may amend the complaint on or before **May 29, 2026. An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The court will review any amended complaint to determine whether it may proceed to service of process.

(5) If Plaintiff wishes to proceed only on the claims noted above, he may file a notice on the docket saying so, at which point the case immediately will proceed to service. If nothing is filed on the docket by **May 29, 2026,** the court will presume Plaintiff wishes to proceed only on these claims.

(6) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court. Failure to do so can result in dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of

change of address.  He should also notify Defendant or defense counsel of his new address.

(7) Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.   Under local court rules, discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2026.

_____/s/_____
Omar A. Williams
United States District Judge